**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Zachary T. Chrzan (SBN 329159)
zchrzan@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VALENTINO GREEN and JACOB POLONSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>IOVATE HEALTH SCIENCES U.S.A. Inc., a Delaware Corporation,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq*.<br>2. FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq*.<br>3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.*<br>4. UNJUST ENRICHMENT<br>5. COMMON LAW FRAUD<br>6. INTENTIONAL MISREPRESENTATION<br>7. NEGLIGENT MISREPRESENTATION<br><br>**DEMAND FOR JURY TRIAL** |

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      Defendant manufactures and sells an extremely popular line of powder supplement products throughout the United States. To increase profits at the expense of consumers and fair competition, Defendant deceptively sells its supplements in oversized packaging that does not reasonably inform consumers that they are nearly half empty. Defendant's slack-fill scam extends to all flavors, sizes, and varieties of Muscletech™ supplements sold in opaque containers (the "Products"). Defendant dupes unsuspecting consumers across America to pay premium prices for empty space. In one version of the Product, the opaque container measures to a vertical height of approximately 10 inches, while the product inside only measures to a vertical height of approximately 6 inches. Below is a true and correct image of Defendant's 100% Whey Gold Double Rich Chocolate Protein Powder Product, evidencing the deception. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.



2

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**DEFENDANT'S SLACK-FILL SCHEME EXTENDS TO ITS OTHER PRODUCTS**

2.      Defendant sells several varieties of protein powders and workout supplements. Each of these Products contains an unlawful amount of slack-fill. In Defendant's Nitro Tech Whey Protein Product, the container measures to a vertical height of 8.25 inches and is filled to a vertical height of 4.25 inches. Defendant underfills this Product by nearly 50%. Below is a true and correct image of Defendant's Nitro Tech Whey Protein Product, evidencing the deception. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.



CLASS ACTION COMPLAINT

3.      In Defendant's VaporX5 Pre-workout Product, the container measures to a vertical height of 5.25 inches and is filled to a vertical height of 2.5 inches. Defendant underfills this Product by over 52%. Below is a true and correct image of Defendant's VaporX5 Pre-workout Product, evidencing the deception. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.



CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

4.      Defendant's Cell-Tech Product measures to a vertical height of 9 inches and is filled to a vertical height of 5.25 inches. Defendant underfills this Product by nearly 42%. Below is a true and correct image of Defendant's Cell-Tech Product, evidencing the deception. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.



5.      Defendant's Amino Build Product measures to a vertical height of 6 inches and is filled to a vertical height of 3.25 inches. Defendant underfills this Product by over 45%. Below is a true and correct image of Defendant's Amino Build Product, evidencing the deception. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.

6.    Defendant's Phase8 Protein Powder Product measures to a vertical height of 11 inches and is filled to a vertical height of 6.25 inches. Defendant underfills this Product by over 43%. Below is a true and correct image of Defendant's Phase8 Protein Powder Product, evidencing the deception. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.



CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

7.     All of the Products are substantially similar. The Products are of the same kind (i.e., powder supplements); contain the same misrepresentations (i.e., oversized, opaque containers with nonfunctional slack-fill); cause the same type of injury (i.e., pecuniary harm from paying for and receiving less powder than reasonably expected); and are amenable to the same prospective remedies (i.e., reducing the packaging size, increasing the amount of powder, or modifying the existing packaging and/or labeling to bring the Products into statutory compliance).

8.     Defendant markets the Products in a systematically misleading manner by representing them as adequately filled when, in fact, they contain an unlawful amount of empty space or "slack-fill." Defendant underfills the Products for no lawful reason. The front of the Products' packaging does not include any information that would reasonably apprise Plaintiffs of the quantity of product relative to the size of the container, such as a fill line.

9.     Defendant underfills the Products to save money (by not filling the containers) and to deceive consumers into purchasing the Products over its competitors' products. Defendant's slack-fill scheme not only harms consumers, but it also harms its competitors who have implemented labeling changes designed to alert consumers to the true amount of product in each container.

10.     Accordingly, Defendant has violated the California Consumers Legal Remedies Act, particularly California Civil Code sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9). As such, Defendant has committed *per se* violations of Business & Professions Code section 17200, *et seq*. and Business & Professions Code section 17500, *et seq*.

11.     Plaintiffs and consumers have, accordingly, suffered injury in fact caused by the false, fraudulent, unfair, deceptive, unlawful, and misleading practices set forth herein, and seek injunctive relief, as well as, *inter alia*, compensatory damages, statutory damages, restitution, and attorneys' fees.

///

///

///

1    **CALIFORNIA STATE AND FEDERAL COURTS FIND SLACK-FILL CASES**

2    **MERITORIOUS AND APPROPRIATE FOR CLASS TREATMENT**

3        12.    Several state and federal courts have found that cases involving nearly identical

claims are meritorious and appropriate for class treatment. *See, e.g.*, *Winkelbauer v. Orgain Mgmt.*

*et. al*, Case No. 20STCV44583 (L.A.S.C. May 20, 2021) (defendant's demurrer to claims

involving slack-filled protein powder products overruled); *Barrett v. Optimum Nutrition*, Case No.

2:21-cv-04398-DMG-SK (C.D. Cal. Jan. 12, 2022) (defendant's FRCP 12(b)(6) motion to dismiss

slack-filled protein powder claims denied); *Padilla v. The Whitewave Foods Co., et. al.*, Case No.

2:18-cv-09327-JAK-JC (C.D. Cal. July 26, 2019) (defendant's FRCP 12(b)(6) motion to dismiss

slack-filled supplement container claims denied); *Matic v. United States Nutrition, Inc.*, Case No.

2:18-cv-09592-PSG-AFM (C.D. Cal. Mar. 27, 2019) (defendant's FRCP 12(b)(6) motion to

dismiss slack-filled supplement container claims overruled); *Merry, et al. v. International Coffee &*

*Tea, LLC dba The Coffee Bean*, Case No. CIVDS1920749 (San Bernardino Superior Court Jan.

27, 2020) (defendant's demurrer to slack-filled powder container claims overruled); *Coleman v.*

*Mondelez Int'l Inc.*, Case No. 2:20-cv-08100-FMO-AFM (C.D. Cal. July 26, 2021) (defendant's

FRCP 12(b)(6) motion to dismiss slack-filled Swedish Fish® candy box claims denied); *Iglesias*

*v. Ferrara Candy Co.*, Case No. 3:17-cv-00849-VC (N.D. Cal. July 25, 2017) (defendant's FRCP

12(b)(6) motion to dismiss slack-filled Jujyfruits® and Lemonhead® candy box claims denied and

nationwide settlement class certified) (cert. granted Oct. 31, 2018); *Tsuchiyama v. Taste of Nature,*

*Inc.*, Case No. BC651252 (L.A.S.C. Feb. 28, 2018) (defendant's motion for judgment on the

pleadings involving slack-filled Cookie Dough Bites® candy box claims denied and nationwide

settlement subsequently certified through Missouri court); *Gordon v. Tootsie Roll Industries, Inc.*,

Case No. 2:17-cv-02664-DSF-MRW (C.D. Cal. Oct. 4, 2017) (defendant's FRCP 12(b)(6)

motions to dismiss slack-filled Junior Mints® and Sugar Babies® candy box claims denied);

*Escobar v. Just Born, Inc.*, Case No. 2:17-cv-01826-BRO-PJW (C.D. Cal. June 12, 2017)

(defendant's FRCP 12(b)(6) motion to dismiss slack-filled Mike N' Ike® and Hot Tamales®

candy box claims denied, and California class action certified over opposition) (cert. granted June

19, 2019); *Thomas v. Nestle USA, Inc.*, Cal. Sup. Case No. BC649863 (April 29, 2020) (certifying

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

as a class action, over opposition, slack-fill claims brought under California consumer protection laws).

## **PARTIES**

13.     Plaintiff Valentino Green is, and at all times relevant hereto was, a citizen of California residing in the county of Alameda. Plaintiff made a one-time purchase of Defendant's Nitro-Tech 100% Whey Gold Protein Powder Product at a GNC store in San Leandro, California in August 2019. Plaintiff paid approximately $50.00 for the Product. In making his purchase, Plaintiff relied upon the opaque packaging, including the size of the container and product label, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products. Plaintiff understood the size of the container and product label to indicate that the amount of protein powder contained therein was commensurate with the size of the container, and he would not have purchased the Product, or would not have paid a price premium for the Product, had he known that the size of the container and product label were false and misleading. If the Product's packaging and labels were not misleading, then Plaintiff would purchase the Product in the future.

14.     Plaintiff Jacob Polonski is, and at all times relevant hereto was, a citizen of California residing in the county of San Mateo. Plaintiff made a one-time purchase of Defendant's Nitro-Tech Whey Protein Powder Product at a GNC store in San Bruno, California in February 2020. Plaintiff paid approximately $50.00 for the Product. In making his purchase, Plaintiff relied upon the opaque packaging, including the size of the container and product label, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Products. Plaintiff understood the size of the container and product label to indicate the amount of protein powder contained therein was commensurate with the size of the container, and he would not have purchased the Product, or would not have paid a price premium for the Product, had he known that the size of the container and product label were false and misleading. If the Product's packaging and labels were not misleading, then Plaintiff would purchase the Product in the future.

15.     Defendant, Iovate Health Sciences U.S.A. Inc. is a Delaware corporation. Defendant maintains its principal place of business at 1105 North Market Street, Suite 1330, Wilmington, DE 19801. Defendant, directly and through its agents, conducts business nationwide. Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Products.

16.     In committing the wrongful acts alleged herein, Defendant planned and participated in and furthered a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendant participated in the making of such representations in that it did disseminate or cause to be disseminated said misrepresentations.

17.     Defendant, upon becoming involved with the manufacture, advertising, and sale of the Products, knew or should have known that its advertising of the Products' packaging, specifically by representing that they were full, was false, deceptive, and misleading. Defendant affirmatively misrepresented the amount of powder contained in the Products' packaging in order to convince the public and consumers of the Products to purchase the Products, resulting in profits of millions of dollars or more to Defendant, all to the damage and detriment of the consuming public.

18.     Defendant has created and still perpetuates a falsehood that Products' packaging contains an amount of powder commensurate with the size of the box, though they actually contain nonfunctional, unlawful slack-fill. As a result, Defendant's consistent and uniform advertising claims about the Products are false, misleading, and/or likely to deceive in violation of California and federal packaging and advertising laws.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. Section 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. Section 1367.

20.     Pursuant to 28 U.S.C. Section 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District: Plaintiffs are citizens of California who reside in this District; Defendant made the challenged false representations to Plaintiffs in this District; and Plaintiffs purchased the Products in this District. Moreover, Defendant receives substantial compensation from sales in this District, actively advertises and sells the Products in this District, and made numerous misrepresentations through its advertising and labeling of Products, which had a substantial effect in this District.

21.     Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and is doing business in California.

## FACTUAL BACKGROUND

22.     The amount of product inside any product packaging is material to any consumer seeking to purchase that product. The average consumer spends only 13 seconds deciding whether to make an in-store purchase;[1] this decision is heavily dependent on a product's packaging, including the package dimensions. Research has demonstrated that packages that seem larger are more likely to be purchased because consumers expect package size to accurately represent the quantity of the good being purchased.[2]

23.     Accordingly, Defendant chose a certain size container for its Products to convey to consumers that they are receiving a certain and substantial amount of powder product commensurate with the size of the container. Such representations constitute an express warranty regarding the Products' content.

---

[1] Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN, Jan. 13, 2015, https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window./.
[2] P. Raghubir & A. Krishna, *Vital Dimensions in Volume Perception: Can the Eye Fool the Stomach?*, 36 J. MARKETING RESEARCH 313-326 (1999).

12

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

24.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for illegitimate or unlawful reasons.

25.     Defendant falsely represents the quantity of product in each of the Products' opaque containers through its packaging. The size of each container leads the reasonable consumer to believe he or she is purchasing a container full of powder product when, in reality, what he or she actually receives is significantly less than what is represented by the size of the container.

26.     Even if Plaintiffs and other reasonable consumers of the Products had a reasonable opportunity to review, prior to the point of sale, other representations of quantity, such as net weight or serving disclosures, they did not and would not have reasonably understood or expected such representations to translate to a quantity of powder product meaningfully different from their expectation of an amount of powder commensurate with the size of the container.

27.     Prior to the point of sale, the Products' packaging does not allow for a visual or audial confirmation of the contents of the Products. The Products' opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Products before opening the container, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone the significant amount of nonfunctional slack-fill that is present in the Products.

28.     The other information that Defendant provides about the quantity of powder on the front and back labels of the Products does not enable reasonable consumers to form any meaningful understanding about how to gauge the quantity of contents of the Products as compared to the size of the container itself. For instance, the front of the Products' packaging does not have any labels that would provide Plaintiffs with any meaningful insight as to the amount of powder to be expected, such as a fill line.

29.     Disclosures of net weight and serving sizes in ounces, pounds, or grams do not allow the reasonable consumer to make any meaningful conclusions about the quantity of powder contained in the Products' containers that would be different from their expectation that the quantity of powder is commensurate with the size of the container.

CLASS ACTION COMPLAINT

30.    Plaintiffs would not have purchased the Product had they known that the Product contained slack-fill that serves no functional or lawful purpose.

## None of the Slack-Fill Statutory Exceptions Apply to the Products

31.    Pursuant to 21 C.F.R. § 100.100, "a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading." An opaque container "shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill." *Id.* Nonfunctional slack-fill is empty space within packaging that is filled to less than its capacity for reasons other than provided for in the enumerated slack fill exceptions.

**A.    21 C.F.R. 100.10(a)(1) – Protection of the Contents**

32.    The slack-fill in the Products' containers does not protect the contents of the packages. In fact, because the product is a powder, there is no need to protect the product with the slack-fill present.

**B.    21 C.F.R. 100.100(a)(2) – Requirements of the Machines**

33.    The machines used to package the Products would not be affected if there was more powder product added. At most, a simple recalibration of the machines would be required. Upon information and belief, adjusting these machines is rather simple.

34.    Because the packages are filled to less than half of their capacity, Defendant can increase the Products' fill level significantly without affecting how the containers are sealed, or it can disclose the fill-level on the outside labeling to inform consumers of the amount of powder product actually in the container, consistent with the law.

**C.    21 C.F.R. 100.100(a)(3) – Settling During Shipping and Handling**

35.    The slack-fill present in the Products' containers is not a result of the powder product settling during shipping and handling. Given the Products' density, shape, and composition, any settling occurs immediately at the point of fill. No measurable product settling occurs during subsequent shipping and handling.

36.    Even if *some* product settling may occur, there is no reason why the Products' containers are nearly half empty, when competitor products – such as the SuperiorSource product

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

below – which have similar product density, shape, and composition as Defendant's product, are filled nearly 90% full.

**D.     21 C.F.R. 100.100(a)(4) – Specific Function of Package**

37.     The packages do not perform a specific function that necessitates the slack-fill. This safe harbor would only apply if a specific function were "inherent to the nature of the food and [] clearly communicated to consumers." The packages do not perform a function that is inherent to the nature of the food. Defendant did not communicate a specific function to consumers, making this provision inapplicable.

**E.     21 C.F.R. 100.100(a)(5) – Reusable Container**

38.     The Products' packaging is not reusable or of any significant value to the Products independent of its function to hold the powder product. The Products' containers are intended to be discarded immediately after the powder product is used.

**F.     21 C.F.R. 100.100(a)(6) – Inability to Increase Fill or Decrease Container Size**

39.     The slack-fill present in the Products' containers does not accommodate required labeling, discourage pilfering, facilitate handling, or prevent tampering.

40.     Defendant can easily increase the quantity of powder in each container (or, alternatively, decrease the size of the containers) significantly.

41.     Because none of the safe harbor provisions apply to the Products' packaging, the packages contain nonfunctional slack-fill in violation of 21 C.F.R. 100.100 and are, therefore, filled as to be misleading. Plaintiffs shall proffer expert testimony to establish these facts once this case reaches the merits more definitively.

///

///

///

///

///

///

///

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**Comparator Products Serve as Additional**

**Evidence of Nonfunctional Slack-Fill**

42.     Contrast the Products' packaging with a comparator product, such as SuperiorSource Keto Collagen, which is also packaged in an opaque container. The SuperiorSource container measures to a vertical height of approximately 7 inches. The container is filled with product to a height of approximately 6.3 inches. Therefore, this product is approximately 90% filled with a similar powder product. Below is a true and correct image of the comparator product. The red line represents the actual fill line, below which is product, and above which is nonfunctional empty space.



43.    The SuperiorSource packaging provides additional evidence that the slack-fill present in the Products' packaging is nonfunctional.

44.    The SuperiorSource packaging provides additional evidence that the slack-fill in the Products is not necessary to protect and, in fact, does not protect, the contents of the Products; is not a requirement of the machines used for enclosing the contents of the Products; is not a result of unavoidable product settling during shipping and handling; is not needed to perform a specific function; and is not part of a legitimate reusable container.

45.    The SuperiorSource packaging provides additional evidence that Defendant is able to increase the level of fill inside the Products' containers.

46.    The SuperiorSource packaging provides additional evidence that Defendant has reasonable alternative designs available to it in its packaging of the Products.

47.    Plaintiffs did not expect that the Product would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by federal law and California law.

48.    The Products are made, formed, and filled so as to be misleading. The Products are, therefore, misbranded.

49.    Defendant's false, deceptive, and misleading label statements are unlawful under state and federal consumer protection and packaging laws.

50.    Defendant's misleading and deceptive practices proximately caused harm to Plaintiffs and the Class.

## CLASS ACTION ALLEGATIONS

51.    Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated. The Class which Plaintiffs seek to represent comprises:

> "All persons who purchased the Products in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present."

Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

endorsement of the Products. Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

52.   The Class is comprised of many thousands of persons. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

53.   Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common questions of law and fact include, but are not limited to, the following:

a.   The true nature and amount of product contained in each Products' packaging;

b.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

c.   Whether Defendant misrepresented the approval of the FDA, United States Congress, and California Legislature that the Products' packaging complied with federal and California slack-fill regulations and statutes;

d.   Whether the Products contain nonfunctional slack-fill in violation of 21 C.F.R. Section 100.100, *et seq.*;

e.   Whether Defendant's conduct is an unlawful business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

f.   Whether Defendant's conduct is a fraudulent business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

g.   Whether Defendant's conduct is an unfair business act or practice within the meaning of Business and Professions Code section 17200, *et seq.*;

h.   Whether Defendant's advertising is untrue or misleading within the meaning of Business and Professions Code section 17500, *et seq.*;

i.   Whether Defendant made false and misleading representations in its advertising and labeling of the Products;

j.   Whether Defendant knew or should have known that the misrepresentations were false;

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

k.   Whether Plaintiffs and the Class paid more money for the Products than they actually received;

l.   How much more money Plaintiffs and the Class paid for the Products than they actually received;

m.   Whether Defendant's conduct alleged herein is fraudulent;

n.   Whether Defendant was unjustly enriched at the expense of Plaintiffs and the Class members;

o.   Whether Defendant intentionally misrepresented the amount of powder contained in the Products' packaging; and

p.   Whether Defendant negligently misrepresented the amount of powder contained in the Products' packaging.

54.   Plaintiffs' claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained on packaging and labeling that was seen and relied on by Plaintiffs and members of the Class.

55.   Plaintiffs will fairly and adequately represent and protect the interests of the proposed Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation. Plaintiffs' Counsel prosecuted the largest slack-fill nationwide class action settlement in 2021. Plaintiffs' Counsel also was the first law firm to successfully certify a slack-fill lawsuit involving theater box candy confectioners (twice in 2019 and 2020, respectively).

56.   Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false, deceptive, and misleading representations. Plaintiffs purchased the Products because of the size of the containers and the product labels, which they believed to be indicative of the amount of protein powder product contained therein as commensurate with the size of the container. Plaintiffs relied on Defendant's representations and would not have purchased the Products if they had known that the packaging, labeling, and advertising as described herein was false and misleading.

///

57.     The Class is identifiable and readily ascertainable. Notice can be provided to such purchasers using techniques and a form of notice similar to those customarily used in class actions and by Internet publication, radio, newspapers, and magazines.

58.     A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually. The trial and the litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

59.     Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendant.

60.     Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class members will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT ONE

### VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW

### BUSINESS & PROFESSIONS CODE § 17200, *et seq.*

61.     Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

62.     Plaintiffs bring this claim individually and on behalf of the Class.

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

63.     Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. §393.

64.     The FDA has implemented regulations to achieve this objective. *See, e.g.*, 21 C.F.R. § 101.1 *et seq.*

65.     The legislature of California has incorporated 21 C.F.R. Section 100.100, which prohibits nonfunctional slack-fill, into the State's Business and Professions Code Section 12606.2 *et seq.*

66.     The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA." *Ivie v. Kraft Foods Global, Inc.,* 2013 U.S. Dist. LEXIS 25615,2013 WL 685372, at *1 (internal citations omitted).

67.     In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling. *See, e.g.*, 21 U.S.C. § 343 *et. seq.*

68.     Plaintiffs are not suing under the FDCA, but under California state law.

69.     The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code Section 109875 *et seq.*, has adopted wholesale the food labeling requirements of the FDCA and NLEA as the food regulations of California. Cal. Health & Safety Code Section 110100.

70.     The Sherman Law declares any food to be misbranded if it is false or misleading in any particular or if the labeling does not conform with the requirements for nutrition labeling set forth in certain provisions of the NLEA. Cal. Health & Safety Code Sections 110660, 110665, 110670.

71.     The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

///

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

### A.    "Unfair Prong"

72.    Under California's Unfair Competition Law, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

73.    Defendant's actions alleged herein do not confer any benefit to consumers.

74.    Defendant's actions alleged herein cause injuries to consumers, who do not receive a quantity of product commensurate with their reasonable expectations.

75.    Defendant's actions alleged herein cause injuries to consumers, who do not receive a level of powder commensurate with their reasonable expectations.

76.    Defendant's actions alleged herein cause injuries to consumers, who end up overpaying for the Products and receiving a quantity of powder less than what they expected to receive.

77.    Consumers cannot avoid any of the injuries caused by Defendant's actions as alleged herein.

78.    Accordingly, the injuries caused by Defendant's conduct alleged herein outweigh any benefits.

79.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

80.    Here, Defendant's challenged conduct of has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

81.    Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T WirelessServs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

///

///

82.     The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Business and Professions Code Section 12606.2 and California Health and Safety Code Section 110100.

83.     The significant nonfunctional slack-fill contained in the Products is tethered to a legislative policy declared in California according to Cal. Business and Professions Code Section 12606.2 and Cal. Health & Safety Code Section 110100.

84.     Defendant's packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct.

85.     Defendant knew or should have known of its unfair conduct.

86.     As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

87.     There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have used packaging appropriate for the amount of powder product contained within the Products.

88.     All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's unfair conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

89.     Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiffs paid an unwarranted premium for this product. Specifically, Plaintiffs paid for powder product they never received. Plaintiffs would not have purchased the Products if they had known that the Products' packaging contained nonfunctional slack-fill.

### B.     "Fraudulent" Prong

90.     California Business and Professions Code Section 17200, et seq., considers conduct fraudulent and prohibits said conduct if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

91.     Defendant's conduct alleged herein is likely to deceive members of the public.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

92.     Defendant's packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes fraudulent conduct.

93.     Defendant knew or should have known of its fraudulent conduct.

94.     As alleged herein, the misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

95.     Defendant had reasonably available alternatives to further its legitimate business interests, other than the fraudulent conduct described herein. Defendant could have used packaging appropriate for the proportion of product contained therein.

96.     All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

97.     Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiffs paid an unwarranted premium for this Product. Specifically, Plaintiffs paid for powder product they never received. Plaintiffs would not have purchased the Products if they had known that the packaging contained nonfunctional slack-fill.

### C.     "Unlawful" Prong

98.     California Business and Professions Code Section 17200, *et seq.*, identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

99.     Defendant's packaging of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et. seq.*, California Business and Professions Code Section 17500, *et. seq.*, and 21 C.F.R Section 100.100.

100.    Defendant's packaging of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

101.    Defendant knew or should have known of its unlawful conduct.

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

102.    As alleged herein, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

103.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have either used packaging appropriate for the amount of powder product contained therein or indicated how much powder the Products contained with a clear and conspicuous fill line.

104.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's unlawful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

105.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiffs paid an unwarranted premium for this product. Specifically, Plaintiffs paid for powder product they never received. Plaintiffs would not have purchased the Product if they had known that the packaging contained nonfunctional slack-fill.

106.    As a result of the conduct described herein, Plaintiffs and members of the Class, pursuant to § 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendant and such other orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

    a.  Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

    (1) The applicable limitations period is four years for claims brought under the UCL, which is one year longer than the applicable statute of limitations under the FAL and CLRA. Thus, class members who purchased the Products between 3 and 4 years prior to the filing of the complaint will be barred from the Class if equitable relief were not granted under the UCL.

    (2) The scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein to include, for example, the

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

overall unfair marketing scheme of underfilling the Products' packaging. Thus, Plaintiffs and class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and certain statutorily enumerated conduct).

(3) Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to deceptively underfill the Products' packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in this unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unlawful marketing efforts. Such modifications could include, but are not limited to, shrinking the packaging, adding more powder product to the packaging, or adding a fill line on the front label. Such relief is not available through a legal remedy, as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiffs and Class members will pay for the underfilled Products), rendering injunctive relief a necessary remedy.

107.   Pursuant to Civil Code § 3287(a), Plaintiffs and the Class are further entitled to prejudgment interest as a direct and proximate result of Defendant's unfair, fraudulent, and unlawful business conduct. The amount on which interest is to be calculated is a sum certain and

capable of calculation, and Plaintiffs and the Class are entitled to interest in an amount according to proof.

**COUNT TWO**

**FALSE AND MISLEADING ADVERTISING IN VIOLATION OF**

**BUSINESS & PROFESSIONS CODE § 17500,** *et seq.*

108.    Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

109.    Plaintiffs bring this claim individually and on behalf of the Class.

110.    California's False Advertising Law, California Business and Professions Code Section 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

111.    Defendant knowingly manipulated the physical dimensions of the Products' containers, or stated another way, under-filled the amount of powder product in the Products, as a means to mislead the public about the amount of powder product contained in each package.

112.    Defendant controlled the packaging of the Products. It knew or should have known, through the exercise of reasonable care, that its representations about the quantity of powder product contained in the Products were untrue and misleading.

113.    Defendant's action of packaging the Products with nonfunctional slack-fill, instead of including more powder in the container or decreasing the size of the container, is likely to deceive the general public.

114.    Defendant's actions were false and misleading, such that the general public is and was likely to be deceived, in violation of Section 17500.

115.    As a direct and proximate result of Defendant's conduct alleged herein in violation of the FAL, Plaintiffs and members of the Class, pursuant to Section 17535, are entitled to an

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

order of this Court enjoining such future wrongful conduct on the part of Defendant and requiring Defendant to disclose the true nature of its misrepresentations.

 a. Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

  (1) The scope of permissible plaintiffs under the FAL is broader than the CLRA to include, for example, individuals or entities who purchased the Products for non-personal, non-family, and non-household purposes. Thus, Plaintiffs and class members may be entitled to restitution under the FAL, while not entitled to damages under the CLRA.

  (2) Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to deceptively underfill the Products' packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more powder product to the packaging, or adding a fill line the front label. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiffs and Class members overpay for the underfilled Products), rendering injunctive relief a necessary remedy.

116.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiffs purchased the Products in reliance upon the claims by Defendant that the Products were of the quantity represented by Defendant's packaging and advertising. Plaintiffs would not have purchased the Products if they had known that the packaging and labeling as alleged herein were false.

117.    Plaintiffs and members of the Class also request an order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, plus interests and attorneys' fees.

## COUNT THREE

## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, *et seq*.

118.    Plaintiffs repeat and re-allege the allegations set forth in the preceding paragraphs and incorporate the same as if set forth herein at length.

119.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

120.    The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result and did result in the sale of the Products to the consuming public and violated and continue to violate sections 1770(a)(2), 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA by: (1) misrepresenting the approval of the Products as compliant with 21 C.F.R Section 100.100 and the Sherman Law; (2) representing the Products have characteristics and quantities that they do not have; (3) advertising and packaging the Products with intent not to sell them as advertised and packaged; and (4) representing that the Products have been supplied in accordance with a previous representation as to the quantity of powder contained within each container, when they have not.

121.    Defendant fraudulently deceive, and continues to deceive, Plaintiffs and the Class by representing that the Products' packaging, which includes significant nonfunctional slack-fill, actually conforms to federal and California slack-fill regulations and statutes including the Sherman Law and 21 C.F.R. 100.100.

1   122.   Defendant packaged the Products in containers that contain significant

2   nonfunctional slack-fill and made material misrepresentations to fraudulently deceive Plaintiffs

3   and the Class.

4   123.   Defendant fraudulently deceived Plaintiffs and the Class by misrepresenting the

5   Products as having characteristics and quantities which they do not have, e.g., that the Products

6   are free of nonfunctional slack-fill when they are not. In doing so, Defendant intentionally

7   misrepresented and concealed material facts from Plaintiffs and the Class. Said

8   misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the

9   Class and depriving them of their legal rights and money.

10   124.   Defendant fraudulently deceived Plaintiffs and the Class by packaging and

11   advertising the Products with intent not to sell them as advertised and by intentionally under-

12   filling the Products' containers and replacing powder product with nonfunctional slack-fill. In

13   doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiffs and

14   the Class. Said misrepresentations and concealment were done with the intention of deceiving

15   Plaintiffs and the Class and depriving them of their legal rights and money.

16   125.   Defendant fraudulently deceived Plaintiffs and the Class by representing that the

17   Products were supplied in accordance with an accurate representation as to the quantity of powder

18   product contained therein when they were not. Defendant presented the physical dimensions of

19   the Products' packaging to Plaintiffs and the Class before the point of purchase and gave

20   Plaintiffs and the Class a reasonable expectation that the quantity of product contained therein

21   would be commensurate with the size of the packaging. In doing so, Defendant intentionally

22   misrepresented and concealed material facts from Plaintiffs and the Class. Said

23   misrepresentations and concealment were done with the intention of deceiving Plaintiffs and the

24   Class and depriving them of their legal rights and money.

25   126.   Defendant knew or should have known, through the exercise of reasonable care,

26   that the Products' packaging was misleading.

27   127.   Defendant's actions as described herein were done with conscious disregard of

28   Plaintiffs' rights, and Defendant was wanton and malicious in its concealment of the same.

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

128.    Defendant's packaging of the Products was a material factor in Plaintiffs' and the Class's decisions to purchase the Products. Based on Defendant's packaging of the Products, Plaintiffs and the Class reasonably believed that they were getting more product than they actually received. Had they known the truth of the matter, Plaintiffs and the Class would not have purchased the Products.

129.    Plaintiffs and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiffs paid for powder product they never received. Plaintiffs would not have purchased the Products had they known the container contained nonfunctional slack-fill.

130.    Plaintiffs respectfully request that the Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2). In addition, Defendant should be compelled to provide restitution and damages to consumers who paid for Products that are not what they expected to receive due to Defendant's misrepresentations.

a.    Plaintiffs and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

(1) Injunctive relief is appropriate on behalf of Plaintiffs and members of the Class because Defendant continues to deceptively underfill the Products' packaging. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unlawful conduct described herein and to prevent future harm – none of which can be achieved through available legal remedies. Further, injunctive relief, in the form of packaging or label modifications, is necessary to dispel public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such modifications would include, but are not limited to, shrinking the packaging, adding more powder product to the packaging, or adding a fill line on the front label. Such relief is also not available through a legal remedy as monetary damages may be awarded to remedy past harm (i.e., purchasers who have been misled), while injunctive relief is necessary to remedy

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

future harm (i.e., prevent future purchasers from being misled), under the current circumstances where the dollar amount of future damages is not reasonably ascertainable at this time. Plaintiffs are, currently, unable to accurately quantify the damages caused by Defendant's future harm (e.g., the dollar amount that Plaintiffs and Class members overpay for the underfilled Products), rendering injunctive relief a necessary remedy.

## COUNT FOUR

### Restitution Based on Quasi-Contract/Unjust Enrichment

131.    Plaintiffs repeat and reallege the allegations set forth above and incorporate the same as if set forth herein at length.

132.    Plaintiffs bring this cause of action individually and on behalf of all members of the Class against Defendant.

133.    By means of Defendant's wrongful conduct alleged herein, Defendant knowingly sold the Products to Plaintiffs and the Class in a manner that was unfair, unconscionable, and oppressive.

134.    Defendant knowingly received and retained wrongful benefits and funds from Plaintiffs and members of the Class. In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and the Class.

135.    As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

136.    Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

137.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, without justification, from selling the Products to Plaintiffs and members of the Class in an unfair, unconscionable, and oppressive manner. Defendant's retention of such funds under such circumstances constitutes unjust enrichment.

///

138.    The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Class. Defendant should be compelled to return in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by Defendant.

139.    Plaintiffs and members of the Class have no adequate remedy at law.

## COUNT FIVE

### Common Law Fraud

140.    Plaintiffs repeat and reallege all of the allegations contained in the preceding paragraphs and incorporate the same as if set forth herein at length.

141.    Plaintiffs bring this cause of action individually and on behalf of the Class against Defendant.

142.    Defendant has willfully, falsely, and knowingly filled and packaged the Products in a manner indicating that the Products are sufficiently filled with an amount of powder product commensurate with the size of the container. However, the Products contain significantly less powder product than advertised and instead contain a substantial amount of nonfunctional and unlawful slack-fill. Defendant has misrepresented the quantity of powder product contained in the Products.

143.    Defendant's misrepresentations are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making his or her purchase decision), because they relate to the quantity of powder product contained in the Products.

144.    Defendant knew of, or showed reckless disregard for, the fact that the Products contained a substantial amount of nonfunctional slack-fill.

145.    Defendant intended for Plaintiffs and the Class to rely on these representations, as evidenced by Defendant's intentional manufacturing of packaging that is substantially larger than necessary to hold the volume of the contents contained therein.

///

///

CLASS ACTION COMPLAINT

146. Plaintiffs and the Class have reasonably and detrimentally relied on Defendant's misrepresentations when purchasing the Products and, had they known the truth, they would not have purchased the Products or would have paid significantly less for the Products.

147. Therefore, as a direct and proximate result of Defendant's fraud, Plaintiffs and members of the Class have suffered injury in fact.

<u>**COUNT SIX**</u>

**Intentional Misrepresentation**

148. Plaintiffs repeat and reallege all of the allegations contained above and incorporate the same as if set forth herein at length.

149. Plaintiffs bring this cause of action individually and on behalf of all members of the Class against Defendant.

150. Defendant has filled and packaged the Products in a manner indicating that the Products are adequately filled with powder. However, the Products contain significantly less powder product than advertised and instead contain a substantial amount of nonfunctional slack-fill. Defendant misrepresents the quantity of powder product contained within the Products' packaging.

151. Defendant's misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quantity of product received by consumers. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

152. At all relevant times when such misrepresentations were made, Defendant knew or should have known that the representations were misleading.

153. Defendant intended for Plaintiffs and the Class to rely on the size and style of the Products' packaging, as evidenced by Defendant's intentional manufacturing, marketing, and selling of packaging that is significantly larger than is necessary to contain the volume of the contents within them.

///

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

154.    Plaintiffs and the Class reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products, and had they known the truth, they would not have purchased the Products or would have purchased them at significantly lower prices.

155.    As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and the Class have suffered injury in fact.

<u>**COUNT SEVEN**</u>

**Negligent Misrepresentation**

156.    Plaintiffs repeat and reallege all of the allegations contained above and incorporate the same as if set forth herein at length.

157.    Plaintiffs bring this cause of action individually and on behalf of the Class against Defendant.

158.    Defendant has filled and packaged the Products in a manner indicating that the Products are adequately filled with powder product. However, the Products contain significantly less powder product than advertised and instead contain a substantial amount of nonfunctional slack-fill. Defendant misrepresents the quantity of powder product contained within the Products' packaging.

159.    Defendant's misrepresentations regarding the Products are material to a reasonable consumer, as they relate to the quantity of product received by the consumer. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making his or her purchase decision.

160.    At all relevant times when such misrepresentations were made, Defendant knew or should have known that the Products were not adequately filled with powder but instead contained a substantial amount of nonfunctional slack-fill.

161.    Defendant intended for Plaintiffs and the Class to rely on the size and style of the Products' packaging, as evidenced by Defendant's packaging that is significantly larger than is necessary to contain the volume of the powder product therein.

///

///

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment and relief on all causes of action as follows:

      A.    An order enjoining Defendant from continuing to package and/or label the Products as challenged herein;

      B.    Damages against Defendant in an amount to be determined at trial, together with pre- and post- judgement interest at the maximum rate allowable by law on any amounts awarded;

      C.    Restitution and/or disgorgement in an amount to be determined at trial;

      D.    Reasonable attorneys' fees and costs; and

      E.    Granting such other and further as may be just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all triable issues.

DATED: April 28, 2022          **CLARKSON LAW FIRM, P.C.**

                          */s/ Zachary Chrzan*
                          Ryan J. Clarkson, Esq.
                          Zachary T. Chrzan, Esq.

CLASS ACTION COMPLAINT